IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROLYN EVERETT, MIKE KOWIS, MICHAEL JAMES KOWIS, WADE ALLEN KOWIS, SAMANTHA KOWIS, MARILYN ANDERSON, DONALD EVERETT, KELSEY PADGET, KELSEY PADGET AS GUARDIAN OF L.P. | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| TRAM CHEMICALS, INC., WALDEN ENVIRONMENTAL CHEMISTRIES, INC. D/B/A PRO STIX SERVICES AND D/B/A GWEB TRADING COMPANY, WALDEN PERFORMANCE PRODUCTS, INC., MAXCONG, LLC, G&C MANAGEMENT, LLC, COMAGLE MANAGEMENT, LLC, ENRIQUE BENDESKY, GLEN E. WALDEN, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5 | § § § § § § § § § § § § § | |
| Defendants. | § § | |

PLAINTIFFS' ORIGINAL COMPLAINT

The Plaintiffs, Carolyn Everett, Mike Kowis, Michael James Kowis, Wade Allen Kowis, Samantha Kowis, Marilyn Anderson, Donald Everett, Kelsey Padgett, and Kelsey Padgett as guardian on behalf of L.P. complain and allege against Defendants Tram Chemicals, Inc., Walden Environmental Chemistries, Inc. d/b/a Pro Stix Services and d/b/a GWEB Trading Company, Walden Performance Products, Inc., Maxcong, LLC, Comagle Management, LLC,

G&C Management, LLC, Enrique Bendesky, Glen E. Walden, and John Doe Defendants 1-5 as follows.

## A. STATEMENT OF THE CASE

1.      This is a civil action pursuant to the provisions of the Resources, Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, as amended, for injunctive relief requiring Defendants to clean up the contamination caused by their unlawful discharge of hazardous waste,  abate the contamination, and prevent further migration into/onto 13897 Old Texaco Road, Conroe, Texas 77302 as well as any area where hazardous waste that migrated from the property have come to be located.

2.      The Plaintiffs also seek damages on their claims against Defendants, individually and/or collectively in any combination for Trespass to Real Property, Negligent Trespass, Private Nuisance, Negligence Per Se, Nuisance Per Se, and Conspiracy.

## B. PARTIES

3.      Plaintiff, Carolyn Everett is an Individual whose address is 13897 Old Texaco Road, Conroe, Texas 77302.

4.      The last three numbers of Carolyn Everett's driver's license number are 350.

5.      The last three numbers of Carolyn Everett's Social Security Number are 458.

6.      Plaintiff, Mike Kowis is an Individual whose address is 13897 Old Texaco Road, Conroe, Texas 77302.

7.      The last three numbers of Mike Kowis' driver's license number are 780.

8.      The last three numbers of Mike Kowis' Social Security Number are 201.

9.      Plaintiff, Michael James Kowis is an Individual whose address is 13897 Old Texaco Road, Conroe, Texas 77302.

10.   The last three numbers of Michael James Kowis' is driver's license number are 879.

11.   The last three numbers of Michael James Kowis' Social Security Number are 283.

12.   Plaintiff, Wade Allen Kowis is an Individual whose address is 13897 Old Texaco Road, Conroe, Texas 77302.

13.   The last three numbers of Wade Allen Kowis' driver's license number are 272.

14.   The last three numbers of Wade Allen Kowis' Social Security Number are 289.

15.   Plaintiff, Samantha Kowis is an Individual whose address is 13897 Old Texaco Road, Conroe, Texas 77302.

16.   The last three numbers of Samantha Kowis' driver's license number are 512.

17.   The last three numbers of Samantha Kowis' Social Security Number are 485.

18.   Plaintiff, Marilyn Anderson is an Individual whose address is 13897 Old Texaco Road, Conroe, Texas 77302.

19.   The last three numbers of Marilyn Anderson's driver's license number are 075.

20.   The last three numbers of Marilyn Anderson's Social Security Number are 923.

21.   Plaintiff, Donald Everett is an Individual whose address is 13897 Old Texaco Road, Conroe, Texas 77302.

22.   The last three numbers of Donald Everett's driver's license number are 929.

23.   The last three numbers of Donald Everett's Social Security Number are 984.

24.   Plaintiff, Kelsey Padgett an Individual whose address is 13897 Old Texaco Road, Conroe, Texas 77302.

25.   The last three numbers of Kelsey Padgett's driver's license number are 407.

26.   The last three numbers of Kelsey Padgett's Social Security Number are 974.

27.     Plaintiff, Kelsey Padgett, brings this suit as guardian on behalf of L.P., a minor child. Plaintiff's address is 13897 Old Texaco Road, Conroe, Texas 77302.

28.     Defendant Tram Chemicals, Inc. a Corporation based in Texas, is organized under the laws of the State of Texas. Defendant has its principal place of business in the State of Texas. Defendant may be served with process, by serving its registered agent of the corporation, Kent M. Hanszen, at 11767 Katy Freeway, Suite 850, Houston, Texas 77079, its registered office. Service of said Defendant as described above can be effected by personal delivery.

29.     Defendant Walden Environmental Chemistries, Inc., d/b/a Pro Stix Services and also d/b/a GWEB Trading Company, a Corporation based in Texas, is organized under the laws of the State of Texas. Defendant has its principal place of business in the State of Texas. Defendant may be served with process by serving the registered agent of the corporation, Glen E. Walden, at 14292 Koalstad Rd., Conroe, TX 77302, its registered office. Service of said Defendant as described above can be effected by personal delivery. Service of said Defendant can additionally be effected by personal delivery by serving Kent M. Hanszen, at 11767 Katy Freeway, Suite 850, Houston, Texas 77079, its registered office, who has been authorized to and has agreed to accept service.

30.     Defendant Walden Performance Products, Inc., a Corporation based in Texas, is organized under the laws of the State of Texas. Defendant has its principal place of business in the State of Texas. Defendant may be served with process by serving the registered agent of the corporation, Robert J. Fumagalli at 9977 W. Sam Houston Pkwy N. Suite 150, its registered office. Service of said Defendant as described above can be effected by personal delivery. Service of said Defendant can additionally be effected by personal delivery by serving Kent M. Hanszen, at 11767

Katy Freeway, Suite 850, Houston, Texas 77079, its registered office, who has been authorized to and has agreed to accept service.

31.    Defendant Maxcong, LLC is a Limited Liability Company based in Texas. Defendant has its principal place of business in the State of Texas. Defendant may be served with process by serving the registered agent of said company, Glen E. Walden, at 7 Dovecote Court, The Woodlands TX 77382 its registered office. Service of said Defendant as described above can be effected by personal delivery. Service of said Defendant can additionally be effected by personal delivery by serving Kent M. Hanszen, at 11767 Katy Freeway, Suite 850, Houston, Texas 77079, its registered office, who has been authorized to and has agreed to accept service.

32.    Defendant Comagle Management, LLC is a Limited Liability Company based in Texas. Defendant has its principal place of business in the State of Texas. Defendant may be served with process by serving the registered agent of said company, Glen E. Walden, at 7 Dovecote Court, The Woodlands TX 77382 its registered office. Service of said Defendant as described above can be effected by personal delivery. Service of said Defendant can additionally be effected by personal delivery by serving Kent M. Hanszen, at 11767 Katy Freeway, Suite 850, Houston, Texas 77079, its registered office, who has been authorized to and has agreed to accept service.

33.    Defendant G&C Management, LLC is a Limited Liability Company based in Texas. Defendant has its principal place of business in the State of Texas. Defendant may be served with process by serving the registered agent of said company, Glen E. Walden, at 7 Dovecote Court, The Woodlands, TX 77382 its registered office. Service of said Defendant as described above can be effected by personal delivery. Service of said Defendant can additionally be effected by personal delivery by serving Kent M. Hanszen, at 11767 Katy Freeway, Suite 850, Houston, Texas 77079, its registered office, who has been authorized to and has agreed to accept service.

34.     Defendant Enrique Bendesky, an individual and citizen of the State of Texas, may be served with process at 6814 Preston Grove Drive, Spring Texas 77389

35.     Defendant Glen E. Walden is an individual and citizen of the State of Texas, may be served with process at 7 Dovecote Court, The Woodlands, TX 77382. Service of said Defendant can additionally be effected by personal delivery by serving Kent M. Hanszen, at 11767 Katy Freeway, Suite 850, Houston, Texas 77079, its registered office, who has been authorized to and has agreed to accept service.

36.     On information and belief, there are other entities related to the Defendant businesses that may have vicarious, derivative or other liability, such as being general partners, or exercising management or control over Defendants. At this time, Plaintiffs designate these as yet unknown entities as "John Doe Defendants 1-5."

37.     Plaintiffs will promptly serve the existing Defendants discovery to identify these related entities and will promptly amend their complaint based upon Defendants' timely and proper response to the discovery requests.

## C. JURISDICTION

38.     This court has jurisdiction over the subject matter of Count I of this action pursuant to 42 U.S.C.A. § 6972(a)(1)(A).

39.      Counts II, III, IV, V, VI, and VII herein are claims for relief in a civil action for equitable relief and damages under Texas state common and statutory law, where the matter in controversy exceeds the sum or value of $50,000.00, exclusive of interest and costs.

40.     This Court has jurisdiction over the subject matter of Counts II, III, IV, V, VI, and VII of this action pursuant to 28 U.S.C.A. §1332.

41.     This Court has supplemental jurisdiction under 28. U.S.C. § 1367 over Plaintiff's Claims over the subject matter of Counts II, III, IV, V, VI, and VII because the claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the U.S. Constitution.

42.     Under 42 USC § 6972(b), Plaintiffs may bring this action immediately after providing notice to the EPA Administrator, the State of Texas, and the Defendants, because the RCRA cause of action in this complaint alleges violations of subchapter III [42 USCS §§ 6921 et seq.] and/or is a hybrid cause of action alleging a violation of subtitle III and another RCRA provision. Plaintiffs have provided such required notice to the required parties by certified mail on November 23rd, 2015.

### D. VENUE

43.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) because the release or threatened release of hazardous waste occurred at or from 13939 Old Texaco Road, Conroe, Texas, located in this judicial District and in Montgomery County.

44.     In the alternative or in addition to paragraph 43, venue is proper in this district because a substantial part of the property at issue is situated in this district, and because a substantial part of the events or omissions giving rise to this claim occurred in this district.

### E. CONDITIONS PRECEDENT

45.     All conditions precedent have been performed or have occurred.

### F. FACTS

46.     Plaintiff, Carolyn Everett (hereinafter "Homestead Owning Plaintiff") is the owner of approximately 15 acres of residential property located at 13897 Old Texaco Road, Conroe, Texas 77302, in Montgomery County, (hereinafter "the Kowis Homestead").

47.     The Kowis Homestead has been in Homestead Owning Plaintiff's family for six generations.

48.     Homestead Owning Plaintiff was born on the Kowis Homestead, and currently shares the land with several members of her extended family including her great-grandchild. Homestead Owning Plaintiff's relatives, Mike Kowis, Michael James Kowis, Wade Allen Kowis, Samantha Kowis, Marilyn Anderson, Donald Everett, Kelsey Padgett, and L.P. (hereinafter "Homestead Resident Plaintiffs"), live on the Kowis Homestead.

49.     There are four dwellings on the Kowis Homestead, and Homestead Owning Plaintiff, and her family have subsisted in part on water from their well and fish they have raised in their property's pond.

50.     Tram Chemicals, Inc., Walden Environmental Chemistries, Inc. d/b/a Pro Stix Services and also d/b/a GWEB Trading Company, Walden Performance Products, Inc., Maxcong, LLC, Comagle Management, LLC, G&C Management, LLC, Enrique Bendesky, Glen E. Walden, and John Doe Defendants 1-5 owned and/or operated commercial property, (hereinafter "Defendants"), individually and/or collectively in any combination, at 13939 Old Texaco Road, Conroe, Texas in Montgomery County, Texas, "hereinafter the ("Polluting Site").

51.     The Polluting Site is within close proximity, approximately 50 yards away from the Kowis Homestead. Defendants were engaged in a chemical tank cleaning business. During the operation of Defendants' business they discharged wastewater into a nearby drainage ditch that ran onto adjacent property, reaching the Kowis Homestead. Defendants' business involved putting liquid soap through a heat treatment process to form soap pellets which they used for industrial cleaning purposes. (Please see Exhibit 1 Attached at 6.)

52.     As a result of Defendants' generation, storage, and disposal on the Polluting Site, hazardous waste was released in the soil, into a roadside drainage ditch, and into the groundwater and have subsequently migrated from the Polluting Site to the Kowis Homestead. That hazardous waste has contaminated and continue to contaminate the soil and groundwater, and surface water of the Kowis Homestead.

53.     In January of 2014, Mike Kowis, a Homestead Resident Plaintiff, smelled dead fish and noticed floating dead fish in his family's pond at the Kowis Homestead. Kowis inspected the issue and noticed a foreign substance surging into the Kowis Homestead, consistent with discharge produced at the Polluting Site.

54.     On February 5, 2014, Kowis contacted the Texas Commission on Environmental Quality and filed a complaint stating that Defendants' facility at the Polluting Site was discharging wastewater into the roadside drainage ditch which flows downstream onto the Kowis Homestead.

55.     The Texas Commission on Environmental Quality conducted an investigation on February 14, 2014. The investigation (Attached as Exhibit 1) found multiple indications of an unlawful discharge of chemicals, and evidence of the chemicals polluting property downstream.

56.     The Texas Commission on Environmental Quality issued Defendants a Notice of Violation Letter, track number 533773 (Attached as Exhibit 1) (hereinafter "TCEQ Violation" ).

57.     The TCEQ Violation, cited Tram Chemicals Inc., for violating TX WATER § 26.121 stating that Tram Chemicals, Inc. "Failed to Obtain a Texas Pollutant Elimination System (TPDES) to discharge wastewater and stormwater. Specifically, it was noted that

Tram Chemicals, Inc., located at 13939 Old Texaco Road, Montgomery County Texas had discharged wastewater, which includes rinse water and wash water and contaminated stormwater into an onsite detention pond. This pond discharges into the Old Texaco roadside ditch. ***Discharging Wastewater and contaminated storm water without a TPDES Permit is unauthorized. An individual TPDES permit to discharge wastewater must be obtained.***" (emphasis added)

58.     Despite the Notice of Violation letter, Homestead Resident Plaintiff Mike Kowis continued to notice discharge onto the Kowis Homestead consistent with the pollutants emitted at the Polluting Site being emitted onto the Kowis Homestead at intervals over the following calendar year. Homestead Resident Plaintiff Mike Kowis could even smell the discharge when it was being emitted.

59.     Accordingly, Kowis filed an additional complaint with The Texas Commission on Environmental Quality, contacted the Game Warden and filed a complaint with the Texas Commission on Environmental Quality Criminal Division. Despite these efforts, the pollutants surging into the Kowis Homestead from the Polluting Site continued for a significant period of time.

60.     As a first step toward responding to on-site contamination at the Kowis Homestead, Plaintiff's hired a consultant Live Oak Environmental Consultants to more fully investigate the contamination at the Kowis Homestead.

61.     Live Oak Environmental Consultants limited their review to the pond at the Kowis Homestead, and did not address the cost of remediating the groundwater, or the soil.

62.     On December 2, 2014, Live Oak Environmental Consultants provided an estimate of the cost of cleanup (Attached as Exhibit 2) of the pond at the Kowis Homestead at between $445,000.00 and $475,000.00.

63.     The Texas Commission on Environmental Quality further investigated the issue by taking and testing chemicals released from multiple point sources at and around the Polluting Site and discovered the waste released included, among others, the substances Nonylphenol monoethoxylate (hereinafter "NP1EO") and nonylphenol diethoxylate (hereinafter "NP2EO"). (Please See Exhibit 3).

64.     These two substances are part of a larger group of chemicals known as nonylphenol ethoxylates (hereinafter "NPE"). NPEs collectively are used as a surfactants, wetting agents, emulsifiers, and dispersants. (Please see Exhibit 4 Attached at 8.)

65.     The European Union found NPE pollution so hazardous that as early as 2003, it chose to strictly regulate the use of NPEs alongside other known toxic pollutants such as cyanides, eliminating NPE from the market entirely in amounts any higher than 0.1% by mass. (Please see Exhibit 5 Attached; Exhibit 6 Attached.)  Recognizing the magnitude of the risk posed by NPEs, this past summer the EU unanimously voted to not only extend the current ban on use of NPEs, it also voted to ban the import of all textile products made with NPEs. (Please see Exhibit 7 Attached.)

66.     NPE contamination in an environment threatens a wide variety of life in the area. Plants surrounding a contaminated area are exposed by absorbing NPE laced water through their roots. Terrestrial herbivores such as deer, wild boar, and livestock are then exposed to secondary poisoning by eating these poison laden plants. Full contamination of an entire food chain is only a matter of time as NPE exposure occurs through skin contact with

contaminated soil, or ingestion of contaminated plants, water, or soil. (Please see Exhibit 8 Attached at 11; Exhibit 9 Attached at 5.)

67.     As a testament to its resilience and insidious ability to disperse itself throughout myriad environments, samples of NPE have been taken from such alarmingly diverse places as freshwater, saltwater, groundwater, sediment, soil, and aquatic life. (Please see Exhibit 4 Attached at 12.)

68.     Numerous studies have found that exposure to NPEs  pose an unacceptable risk to aquatic and terrestrial ecosystems. *Id*. NP1EO and NP2EO specifically have been shown to have additive or synergistic effects. This means that the resulting toxicity of these two compounds together is greater than the sum of their individual effects. (Please see Exhibit 10 at 600, 605.)

69.     These studies are consistent with the effects witnessed at the Kowis Homestead by Plaintiffs, after Defendants released pollutants from the Polluting Site onto/into the Kowis Homestead.

70.     For generations, bevy of deer have flocked and fed on the Kowis Homestead; however, after the multiple and repeated discharges of hazardous waste by Defendants, deer will no longer visit the Kowis Homestead.

71.     NPEs exhibit their toxic effects in marine and freshwater life through initial narcosis and their ability to induce estrogenic responses in following generations. (Please see Exhibit 8 Attached at 10; Exhibit 10 at 605.) Those populations of fish initially exposed to NPE undergo narcosis, a state where they go comatose and quickly die. (Please see Exhibit 10 at 605). Subsequent generations of fish exposed to NPE also display adverse effects. NPE feminizes fish, severely disrupting their reproductive cycles by inhibiting their

natural development and growth. (Please see Exhibit 11 Attached at 1; Exhibit 12 Attached at 6.)

72.     These studies are consistent with the effects witnessed at the Kowis Homestead by Plaintiffs, after the discharge of pollutants from Polluting Site; aquatic life, a former feature in the Kowis Homestead pond, ceased to be viable.

73.     Plaintiffs are now unable to drink from the water wells at the Kowis Homestead that generations have relied on. Water from the Kowis Homestead wells now have a noticeable toxic odor. As a result, Plaintiffs have been forced to rely on truckloads of bottled water to subsist and survive.

74.     The harmful effects of NPE are not limited to environmental concerns, as NPEs have been found to migrate into human breast milk, blood, and urine.  (Please see Exhibit 4 Attached at 13.)

75.     NPEs are toxic to rats and mice, causing renal failure, reproductive dysfunction, and developmental disruption. (Please see Exhibit 13 at 301 Attached at 604). Though this effect has yet to be observed in humans, hormonal systems in people and animals are exceedingly sensitive. Due to the severely toxic nature of NPEs, the effects of NPEs observed in small mammals could cause similar effects in humans at a level of only parts per trillion. (Please see Exhibit 10 Attached at 604).

76.     NPE exhibits a dual problem. Not only is it dangerous in its own right, (Please see Exhibit 10 Attached at 599), it biodegrades into an even more toxic and hazardous substance, nonylphenol, which was also found in the samples taken in and around the Polluting Site. (*Id.*; Exhibit 3 Attached)

77.     Nonylphenol is even deadlier and more persistent than NPE, leading the Environmental Protection Agency (EPA) to add a nonylphenol category to the list of toxic chemicals subject to reporting under section 313 of the Emergency Planning and Community Right-to-Know Act (EPCRA) of 1986 and section 6607 of the Pollution Prevention Act (PPA) of 1990. (40 CFR § 372.) The EPA also issued a proposed Significant New Use Rule to limit the use of these noxious compounds. (Please See Exhibit 14 Attached.)

78.     The same estrogenic properties of NPE were found to increase the further it degrades into nonylphenol. (Please See Exhibit 10 Attached at 599.)

79.     Nonylphenol is a known breast cancer cell antagonist, inducing the growth of human estrogen-sensitive breast cancer cells. (Please see Exhibit 15 Attached at 165). The deadly effects of nonylphenol are compounded by the fact that the other chemicals found, NP1EO and NP2EO, behave synergistically with nonylphenol to produce an even more harmful and deadly chemical cocktail. (Please see Exhibit 10 Attached at 604-05.)

80.     The Texas Commission on Environmental Quality's investigation also found samples taken from the Polluting Site to contain Barium, Lead, Chromium, Selenium, Silver, Cadmium, and Acetone, all considered hazardous waste under RCRA. (Please see Exhibit 3 Attached.)

### G. COUNT I – RCRA CITIZEN'S SUIT

81.     Plaintiffs reallege and incorporate by reference Paragraph Nos. 1 through 80 of this Complaint as if fully restated herein.

82.     Section 3001 of the Act requires the Administrator of the U.S. Environmental Protection Agency ("EPA") to develop and promulgate criteria for identifying the characteristics

of hazardous waste, taking into account toxicity, persistence, and degradability in nature, potential for accumulation in tissue, and other related factors, such as flammability, corrosiveness, and other hazardous characteristics. (42 U.S.C.A. § 6921(a).) Such criteria are to be promulgated as regulations that identify the characteristics of hazardous wastes subject to the provisions of Subtitle C of RCRA (pertaining to hazardous wastes). (42 U.S.C.A. § 6921(b).) Once a waste is identified as hazardous, it is subject to a comprehensive, cradle-to-grave regulatory system that governs handling, storage, transport, disposal, and other management. (See 40 C.F.R. Part 260 to 270.)

83.     The State of Texas operates a hazardous waste program, as any state may seek authorization from the Administrator of the EPA to administer and enforce a hazardous waste program pursuant to Subtitle C of RCRA. (RCRA § 3006(b), 42 U.S.C.A. § 6926(b).) If the Administrator determines that the State's program meets the standards set forth in Section 3006(b)—requiring that the proposed State program be consistent with and equivalent to the Federal program and that the State program contain adequate enforcement provisions—then the State is authorized to carry out its program in lieu of the Federal program under Subtitle C of RCRA, although EPA retains oversight responsibility. Action taken by a State under a hazardous waste program authorized under Section 3006 shall have the same force and effect as action taken by the Administrator under Subtitle C of RCRA. (42 U.S.C.A. § 6926(d),

84.     The Defendants are "person[s]" within the meaning of Section 1004(15) of RCRA. 42 U.S.C. § 6903(15).

85.     The Defendants, individually and/or collectively in any combination, are "past or present generator[s]" and/or "past or present owner[s] or operator[s]" of a treatment, storage, or disposal facility" within the meaning of 42 U.S.C. § 6972(a)(1)(B), and have and/or are

contributing to the past or present handling, storage, treatment, transportation, or disposal of "solid" or "hazardous waste" within the meaning of 42 U.S.C. § 6972(a)(1)(B).

86.     The Defendants, individually and/or collectively in any combination, caused or contributed to a condition that presents or may present an imminent and substantial endangerment to health or the environment because the Defendants, individually and/or collectively in any combination, released "solid wastes" or "hazardous wastes" from locations including but not limited to the Polluting Site and into the Kowis Homestead in their course of improperly handling, storing, and/or disposing of such wastes during their ownership and/or operation of their facility. The Defendants, individual and/or collective in any combination, actions meet the requirements for a citizen's suit to be brought against them under 42 U.S.C. § 6972(a)(1)(B).

87.     In the alternative or in addition to paragraph 86, Defendants, individually and/or collectively in any combination, violated the prohibition on open dumping of "solid waste" or "hazardous waste." found in 42 U.S.C. § 6945(a). The Pollution Site is not a sanitary landfill and is not a facility for the disposal of hazardous waste, as classified by 42 U.S.C. § 6903(14). The Kowis Homestead is not a sanitary landfill and is not a facility for the disposal of hazardous waste, as classified by 42 U.S.C. § 6903(14). The Defendants, individually and/or collectively in any combination, as a facility that disposes of hazardous waste, did not have the required permit to operate an open dump, in violation of 42 U.S.C. § 6925(a).

88.     The waste that Defendants caused to enter the Kowis Homestead is "hazardous waste" as defined by 42 USCS § 6903(5), in that it is "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may--

(A)  cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or

(B)  pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."

89.     42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a civil action against any person or governmental entity including a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed to the past or present storage, treatment, transportation, and/or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or to the environment. Civil penalties may be assessed against any person or entity in violation of this section, under the provisions of the RCRA, 42 U.S.C. §§ 6928 (a) or (g).

90.     42 U.S.C. § 6972(a)(1)(A), provides that any person may commence a civil action against any person or governmental entity alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, and/or order which has become effective pursuant to the RCRA. Civil penalties may be assessed against any person or entity in violation of such permits, etc. pursuant to the RCRA under the provisions of 42 U.S.C. §§ 6928 (a) or (g).

91.     Plaintiffs are entitled to relief under 42 U.S.C. § 6972(a):

a.       Restraining Defendants, individually and/or collectively in any combination, and requiring them, individually and/or collectively in any combination, to take action, including a complete, timely, and appropriate investigation and abatement of all actual and potential endangerments arising from the released "solid waste" and/or "hazardous waste" at and emanating from their facility as may be necessary to abate the actual and potential endangerment at issue

b.      Declaring that Defendants, individually and/or collectively in any combination, have been and continue to be in in violation of regulations that have become effective pursuant to the Act;

c.      Awarding Plaintiff its costs of litigation, including but not limited to attorney's fees and expert witness fees, pursuant to Section 7002(e) of the Act, 42 U.S.C. § 6972(e)

d.      Imposing a civil penalty, pursuant to Section 3008(g) of the Act,  42 U.S.C. § 6928 (g), upon Defendants of Twenty-Five Thousand ($25,000) Dollars per day of violation of each violation cited in this Complaint and for each violation cited in this Complaint and for any other violations that may become known during this course of this litigation

e.      Granting such further relief as this Court finds to be appropriate and just.

92.     Information currently available to Plaintiffs indicates that Defendants' handling, treatment, storage, transportation, and/or disposal of their hazardous waste in violation of RCRA has occurred numerous days since January of 2014, and/or on numerous separate occasions.

93.     Plaintiffs are not aware of any action taken on behalf of the United States, any federal agency, the State of Texas, or any Texas agency to commence and diligently prosecute an action to restrain or abate acts or conditions that may have contributed or are contributing to the activities that may present the alleged endangerment.

## H. COUNT II – TRESPASS TO REAL PROPERTY

94.     Plaintiffs reallege and incorporate by reference Paragraph Nos. 1 through 93 of this       Complaint       as       if       fully       restated       herein.

95.      Homestead Owning Plaintiff owned certain real property, the Kowis Homestead, located at 13897 Old Texaco Road, Conroe, Texas 77302, in Montgomery County, Texas.

96.    Defendants, individually and/or collectively in any combination,  physically, intentionally, and voluntarily entered the Kowis Homestead, when Defendants caused, discharged, and emitted, and continued to cause, discharge, and emit substances, pollutants, waste, chemicals, and/or other tangible things onto/into the Kowis Homestead.

97.    Defendants', individual and/or collective in any combination, entry on to the Kowis Homestead was unauthorized, and/or deliberate and willful. Homestead Owning Plaintiff or Homestead Resident Plaintiffs never gave Defendants, individually and/or collectively in any combination the right to enter the Kowis Homestead generally, nor did Homestead Owning Plaintiff or Homestead Resident Plaintiffs give Defendants, individually and/or collectively in any combination, permission to discharge and emit substances, pollutants, waste, chemicals, and/or other tangible things onto/into the Kowis Homestead.

98.    Defendants', individual and/or collective in any combination, trespass caused injury to Homestead Owning Plaintiff, which resulted in the following damages:

a.    Market-value damages for permanent injury to land, which is the difference between the property's value immediately before or after the damage, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

b.    Actual or Intrinsic-value damages for permanent injury to land, because there is no market value for the land, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

c.    In the alternative or in addition to sections (a) and (b) of this paragraph, damages for cost-of-repairs and loss of use for temporary injury to the land, as the injuries to the land are temporary injuries that can be repaired, fixed, or restored and for which any recurrence would be only occasional, irregular, intermittent, and not reasonably predictable.

d.    Stigma damages, which compensate plaintiff for the permanent injury to the property's reputation even after it was physically restored.

e.    Physical pain in the past and future

f.    Mental anguish in the past and future.

g.    Medical expenses in the future.

99.    Defendants', individual and/or collective in any combination, trespass caused injury to members of Homestead Owning Plaintiff's household, namely Homestead Resident Plaintiffs, which resulted in the following damages to Homestead Resident Plaintiffs:

a.    Physical pain in the past and future

b.    Mental anguish in the past and future.

c,    Medical expenses in the future.

100.    Plaintiffs seek damages within the jurisdictional limits of this Court.

101.    Exemplary damages. Homestead Owning Plaintiff's and Homestead Resident Plaintiffs' injuries resulted from Defendants' gross negligence and malice, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## I. COUNT III – NEGLIGENT TRESPASS

102. Plaintiffs reallege and incorporate by reference Paragraph Nos. 1 through 101 of this Complaint as if fully restated herein.

103. In the alternative or in addition to Count II, Defendants, individually and/or collectively in any combination, unintentionally entered Homestead Owning Plaintiff's property.

104. Defendants, individually and/or collectively in any combination, owed a legal duty to Homestead Owning Plaintiff not trespass the Kowis Homestead or cause or permit a thing to cross the boundary of the premises.

105. Defendants, individually and/or collectively in any combination, breached the duty to Homestead Owning Plaintiff by causing or permitting, pollutants, waste, chemicals, and/or other tangible things onto/into the Kowis Homestead.

106. Defendants', individual and/or collective in any combination, breach of duty proximately caused injury to Homestead Owning Plaintiff, which resulted in the following damages:

a. Market-value damages for permanent injury to land, which is the difference between the property's value immediately before or after the damage, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

b. Actual or Intrinsic-value damages for permanent injury to land, because there is no market value for the land, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

c.  In the alternative or in addition to sections (a) and (b) of this paragraph, damages for cost-of-repairs and loss of use for temporary injury to the land, as the injuries to the land are temporary injuries that can be repaired, fixed, or restored and for which any recurrence would be only occasional, irregular, intermittent, and not reasonably predictable.

d.  Stigma damages, which compensate plaintiff for the permanent injury to the property's reputation even after it was physically restored.

e.  Physical pain in the past and future

f.  Medical expenses in the future.

107.  Defendants', individual and/or collective in any combination, breach of duty proximately caused injury to members of Homestead Owning Plaintiff's household, namely Homestead Resident Plaintiffs, which resulted in the following damages to Homestead Resident Plaintiffs:

a.  Physical pain in the past and future

b.  Medical expenses in the future.

108.   Homestead Owning Plaintiff seeks damages within the jurisdictional limits of this Court.

109.  Homestead Resident Plaintiffs seek damages within the jurisdictional limits of this Court.

110.  Exemplary damages. Homestead Owning Plaintiff's and Homestead Resident Plaintiffs' injuries resulted from Defendants' gross negligence, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

### J. COUNT IV – PRIVATE NUISANCE

111.     Plaintiffs reallege and incorporate by reference Paragraph Nos. 1 through 110 of this Complaint as if fully restated herein.

112.     Homestead Owning Plaintiff owned certain real property, located at 13897 Old Texaco Road, Conroe, Texas 77302, in Montgomery County, Texas, the Kowis Homestead.

113.     Defendants, individually and/or collectively in any combination, intentionally and unreasonably invaded Homestead Owning Plaintiff's interest by causing or permitting, pollutants, waste, chemicals, and/or other tangible things onto/into the Kowis Homestead,

114.     Alternatively, Defendants, individually and/or collectively in any combination, negligently invaded Plaintiff's interest by causing or permitting, pollutants, waste, chemicals, and/or other tangible things onto/into the Kowis Homestead.

115.     Defendants', individual and/or collective in any combination, conduct resulted in The Kowis Homestead land, surface water, and water wells becoming polluted which substantially interfered with Homestead Owning Plaintiff's and Homestead Resident Plaintiffs' private use and enjoyment of the Kowis Homestead. The interferences caused unreasonable discomfort or annoyance to Plaintiffs, persons of ordinary sensibilities attempting to use and enjoy the Kowis Homestead.

116.     The damage to the Kowis Homestead was a permanent injury to land, because the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

117.     In the alternate to paragraph 116, the damage to the Kowis Homestead was a injury to the land that can be repaired, fixed, or restored and for which any recurrence would be only occasional, irregular, intermittent, and not reasonably predictable.

118.    Defendants, individually and/or collectively in any combination, invaded and/or interfered with Homestead Owning Plaintiffs' interest and caused injury to Homestead Owning Plaintiff which resulted in the following damages:

a.    Market-value damages for permanent injury to land, which is the difference between the property's value immediately before or after the damage, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

b.    Actual or Intrinsic-value damages for permanent injury to land, because there is no market value for the land, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

c.    In the alternative or in addition to sections (a) and (b) of this paragraph, damages for cost-of-repairs and loss of use for temporary injury to the land, as the injuries to the land are temporary injuries that can be repaired, fixed, or restored and for which any recurrence would be only occasional, irregular, intermittent, and not reasonably predictable.

d.    Stigma damages, which compensate plaintiff for the permanent injury to the property's reputation even after it was physically restored.

e.    Physical pain in the past and future

f.    Mental anguish in the past and future.

g.    Medical expenses in the future.

119.     Defendants, individually and/or collectively in any combination, invaded and/or interfered with Homestead Owning Plaintiffs' interest and caused injury to members of Homestead Owning Plaintiff's household, namely Homestead Resident Plaintiffs, which resulted in the following damages to Homestead Resident Plaintiffs:

    a.     Physical pain in the past and future

    b.     Mental anguish in the past and future.

    c.     Medical expenses in the future.

120.     Plaintiffs seek damages within the jurisdictional limits of this Court.

121.     <u>Exemplary damages.</u> Homestead Owning Plaintiff's and Homestead Resident Plaintiffs' injuries resulted from Defendants' gross negligence or malice, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## K. COUNT V – NEGLIGENCE PER SE

122.     Plaintiffs reallege and incorporate by reference Paragraph Nos. 1 through 121 of this Complaint as if fully restated herein.

123.     Section 26.121. of the Texas Water Code,  provides, TX WATER § 26.121 that:

(a) Except as authorized by the commission, no person may:

> (1) discharge sewage, municipal waste, recreational waste, agricultural waste, or industrial waste into or adjacent to any water in the state;
> (2) discharge other waste into or adjacent to any water in the state which in itself or in conjunction with any other discharge or activity causes, continues to cause, or will cause pollution of any of the water in the state, unless the discharge complies with a person's:
>> (A) certified water quality management plan approved by the State Soil and Water Conservation Board as provided by Section 201.025, Agriculture Code; or

(B) water pollution and abatement plan approved by the commission; or (3) commit any other act or engage in any other activity which in itself or in conjunction with any other discharge or activity causes, continues to cause, or will cause pollution of any of the water in the state, unless the activity is under the jurisdiction of the Parks and Wildlife Department, the General Land Office, the Department of Agriculture, or the Railroad Commission of Texas, in which case this subdivision does not apply.

(b) In the enforcement of Subdivisions (2) and (3) of Subsection (a) of this section, consideration shall be given to the state of existing technology, economic feasibility, and the water quality needs of the water that might be affected. This subdivision does not apply to any NPDES activity.

(c) No person may cause, suffer, allow, or permit the discharge of any waste or the performance of any activity in violation of this chapter or of any permit or order of the commission.

(d) Except as authorized by the commission, no person may discharge any pollutant, sewage, municipal waste, recreational waste, agricultural waste, or industrial waste from any point source into any water in the state.

(e) No person may cause, suffer, allow, or permit the discharge from a point source of any waste or of any pollutant, or the performance or failure of any activity other than a discharge, in violation of this chapter or of any rule, regulation, permit, or other order of the commission.

124.    Specifically Defendants, individually and/or collectively in any combination, violated TX WATER § 26.121(a)(1), when Defendants, individually and/or collectively in any combination, discharged sewage, municipal waste, recreational waste, agricultural waste, or industrial waste into or adjacent to a water in the state, without a Texas Pollutant Emission System (TPDES ) permit, and accordingly, not authorized by the commission per TX WATER § 26.121(a).

125.    In the alternative or in addition to paragraph 124, Defendants, individually and/or collectively in any combination, violated TX WATER § 26.121(a)(2) and/or TX WATER § 26.121(a)(3) when Defendants, individually and/or collectively in any combination, discharged other waste, or committed any other act, without any approval from any of the listed government entities in TX WATER § 26.121, which in itself or in

conjunction with any other discharge or activity caused, continues to caused, or will cause pollution of any of the water in the state.

126.     In the alternative or in addition to paragraphs 124-125, Defendants, individually and/or collectively in any combination, violated TX WATER § 26.121(c), when Defendants individually and/or collectively in any combination, caused, suffered, allowed, or permitted the discharge of any waste or the performance of any activity in violation of the Texas Water Code, when defendants discharged waste and storm water without a TPDES permit.

127.     In the alternative or in addition to paragraphs 124-126, Defendants, individually and/or collectively in any combination, violated TX WATER § 26.121(d) when Defendants individually and/or collectively in any combination, discharged a pollutant, sewage, municipal waste, recreational waste, agricultural waste, or industrial waste from a point source into a water in the state.

128.     In the alternative or in addition to paragraphs 124-127, Defendants, individually and/or collectively in any combination, violated TX WATER § 26.121(e) when Defendants individually and/or collectively in any combination, caused, suffered, allowed, or permitted the discharge from a point source of a waste or of a pollutant, or the performance or failure of any activity other than a discharge, in violation of the Texas Water Code, or of any rule, regulation, permit, or other order of the commission.

129.     This statute is designed to protect people like Homestead Owning Plaintiff and Homestead Resident Plaintiffs and other people of this State against the type of pollution suffered by Homestead Owning Plaintiff at the hands of Defendants, individually and/or collectively in any combination.

130.     This statute is of the type that imposes tort liability. The statute is penal in nature because it prohibits polluting water and allows agents and employees of Parks and Wildlife Department to enforce the statute as constituted peace officers. TX WATER § 26.215.

131.     Defendants', individual and/or collective in any combination, violation of the statute was without a legal excuse. Defendants, individually and/or collectively in any combination, were operating a business without authorization from the commission, without submitting a certified water quality management plan, and without a water pollution and abatement plan approved by the commission.

132.     Defendants', individual and/or collective in any combination, breach of the duty imposed by the statute proximately caused injury to Homestead Resident Plaintiff for:

a.     Market-value damages for permanent injury to land, which is the difference between the property's value immediately before or after the damage, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

b.     Actual or Intrinsic-value damages for permanent injury to land, because there is no market value for the land, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

c.     In the alternative or in addition to sections (a) and (b) of this paragraph, damages for cost-of-repairs and loss of use for temporary injury to the land, as the injuries to the land are temporary injuries that can be repaired, fixed, or restored and for which any

recurrence would be only occasional, irregular, intermittent, and not reasonably predictable.

d.      Stigma damages, which compensate plaintiff for the permanent injury to the property's reputation even after it was physically restored.

e.      Physical pain in the past and future

f.      Mental anguish in the past and future.

g.      Medical expenses in the future.

133.    Defendants', individual and/or collective in any combination, breach of the duty imposed by the statute proximately caused injury to members of Homestead Resident Plaintiff's household,  namely Homestead Resident Plaintiffs, which resulted in the following damages to Homestead Resident Plaintiffs:

a.      Physical pain in the past and future

b.      Mental anguish in the past and future.

c.      Medical expenses in the future.

134.    Plaintiff and Homestead Resident Plaintiffs seek damages within the jurisdictional limits of this Court.

135.    <u>Exemplary damages</u>. Homestead Owning Plaintiff's and Homestead Resident Plaintiffs' injuries resulted from Defendants' gross negligence or malice, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## L. COUNT VI – NUISANCE PER SE

136.    Plaintiffs reallege and incorporate by reference Paragraph Nos. 1 through 135 of this Complaint as if fully restated herein.

137.     In the alternative or in addition to Count V, defendants' negligence described in Count V can be considered a nuisance at all times, under any circumstances, and in any location.

138.     Section 26.121. of the Texas Water Code,  provides, TX WATER § 26.121 that:

> (a) Except as authorized by the commission, no person may:
>
> (1) discharge sewage, municipal waste, recreational waste, agricultural waste, or industrial waste into or adjacent to any water in the state;
>
> (2) discharge other waste into or adjacent to any water in the state which in itself or in conjunction with any other discharge or activity causes, continues to cause, or will cause pollution of any of the water in the state, unless the discharge complies with a person's:
>
>> (A) certified water quality management plan approved by the State Soil and Water Conservation Board as provided by Section 201.025, Agriculture Code; or
>>
>> (B) water pollution and abatement plan approved by the commission; or
>
> (3) commit any other act or engage in any other activity which in itself or in conjunction with any other discharge or activity causes, continues to cause, or will cause pollution of any of the water in the state, unless the activity is under the jurisdiction of the Parks and Wildlife Department, the General Land Office, the Department of Agriculture, or the Railroad Commission of Texas, in which case this subdivision does not apply.
>
> (b) In the enforcement of Subdivisions (2) and (3) of Subsection (a) of this section, consideration shall be given to the state of existing technology, economic feasibility, and the water quality needs of the water that might be affected. This subdivision does not apply to any NPDES activity.
>
> (c) No person may cause, suffer, allow, or permit the discharge of any waste or the performance of any activity in violation of this chapter or of any permit or order of the commission.
>
> (d) Except as authorized by the commission, no person may discharge any pollutant, sewage, municipal waste, recreational waste, agricultural waste, or industrial waste from any point source into any water in the state.
>
> (e) No person may cause, suffer, allow, or permit the discharge from a point source of any waste or of any pollutant, or the performance or failure of any activity other than a discharge, in violation of this chapter or of any rule, regulation, permit, or other order of the commission.

139.     Specifically, Defendants, individually and/or collectively in any combination, violated TX WATER § 26.121(a)(1), when Defendants, individually and/or collectively in

any combination, discharged sewage, municipal waste, recreational waste, agricultural waste, or industrial waste into adjacent to a water in the state, without a Texas Pollutant Emission System (TPDES ) permit, and accordingly, not authorized by the commission per TX WATER § 26.121(a).

140.      In the alternative or in addition to paragraph 139, Defendants, individually and/or collectively in any combination, violated TX WATER § 26.121(a)(2) and/or TX WATER § 26.121(a)(3) when Defendants, individually and/or collectively in any combination, discharged other waste, or committed any other act, without any approval from any of the listed government entities in TX WATER § 26.121, which in itself or in conjunction with any other discharge or activity caused, continues to caused, or will cause pollution of any of the water in the state.

141.      In the alternative or in addition to paragraphs 139-140, Defendants, individually and/or collectively in any combination, violated TX WATER § 26.121(c), when Defendants individually and/or collectively in any combination, caused, suffered, allowed, or permitted the discharge of any waste or the performance of any activity in violation of the Texas Water Code, when defendants discharged waste and storm water without a TPDES permit.

142.      In the alternative or addition to paragraphs 139-141, Defendants, individually and/or collectively in any combination, violated TX WATER § 26.121(d) when Defendants individually and/or collectively in any combination, discharged a pollutant, sewage, municipal waste, recreational waste, agricultural waste, or industrial waste from a point source into a water in the state.

143.      In the alternative or addition to paragraphs 139-142, Defendants, individually and/or collectively in any combination, violated TX WATER § 26.121(e) when Defendants individually and/or collectively in any combination, caused, suffered, allowed, or permitted the discharge from a point source of a waste or of a pollutant, or the performance or failure of any activity other than a discharge, in violation of the Texas Water Code, or of any rule, regulation, permit, or other order of the commission.

144.      This statute is designed to protect people like Homestead Owning Plaintiff and Homestead Resident Plaintiffs and other people of this State against the type of pollution suffered by Homestead Owning Plaintiff at the hands of Defendants, individually and/or collectively in any combination.

145.      Defendants', individually and/or collectively in any combination, violation of the statute was without a legal excuse. Defendants, individually and/or collectively in any combination, were operating a business without authorization from the commission, without submitting a certified water quality management plan, and without a water pollution and abatement plan approved by the commission.

146.      Defendants, individually and/or collectively in any combination, invaded and/or interfered with Homestead Owning Plaintiffs' interest and caused injury to Homestead Owning Plaintiff which resulted in the following damages:

        a.      Market-value damages for permanent injury to land, which is the difference between the property's value immediately before or after the damage, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

b.      Actual or Intrinsic-value damages for permanent injury to land, because there  is no market value for the land, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

c.      In the alternative or in addition to sections (a) and (b) of this paragraph, damages for cost-of-repairs and loss of use for temporary injury to the land, as the injuries to the land are temporary injuries that can be repaired, fixed, or restored and for which any recurrence would be only occasional, irregular, intermittent, and not reasonably predictable.

d.      Stigma damages, which compensate plaintiff for the permanent injury to the property's reputation even after it was physically restored.

e.      Physical pain in the past and future

f.      Mental anguish in the past and future.

g.      Medical expenses in the future.

147.      Defendants, individually and/or collectively in any combination, invaded and/or interfered with Homestead Owning Plaintiffs' interest and caused injury to members of Homestead Owning Plaintiff's household, namely Homestead Resident Plaintiffs, which resulted in the following damages to Homestead Resident Plaintiffs:

a.      Physical pain in the past and future

b.      Mental anguish in the past and future.

c.      Medical expenses in the future.

148.      Plaintiffs seek damages within the jurisdictional limits of this Court.

149.    <u>Exemplary damages</u>. Homestead Owning Plaintiff's and Homestead Resident Plaintiffs' injuries resulted from Defendants' gross negligence or malice, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## M. COUNT VII – CONSPIRACY

150.    Plaintiffs reallege and incorporate by reference Paragraph Nos. 1 through 149 of this Complaint as if fully restated herein.

151.    In the alternative or in addition to other counts, Defendant Tram Chemicals, Inc., in combination with, Walden Environmental Chemistries, Inc. d/b/a Pro Stix Services and also d/b/a GWEB Trading Company, Walden Performance Products, Inc., Maxcong, LLC, Comagle Management, LLC,  G&C Management, LLC, Enrique Bendesky, Glen E. Walden, and John Doe Defendants 1-5 agreed to pollute adjacent lands including that of the Kowis Homestead by discharging pollutants and/or hazardous waste without a permit, including discharging such into a roadside ditch.

152.    Defendants, individually and/or collectively in any combination, acted with the intent to harm Plaintiffs by engaging in Negligent Trespass, Private Nuisance, Nuisance Per Se, Negligence Per Se, and Trespass to Real Property.

153.    To accomplish the object of their agreement, Defendants, individually and/or collectively in any combination, unlawfully, wantonly, and overtly disregarded laws and regulations in an act of gross negligence. Additionally, Defendants, individually and/or collectively in any combination, physically, intentionally, and voluntarily entered the Kowis Homestead when Defendants, individually and/or collectively in any combination, caused,

discharged, and emitted, and continued to cause, discharge, and emit substances, pollutants, waste, chemicals, and/or other tangible things onto/into the Kowis Homestead.

154.     Defendants' individual and/or collective in any combination agreement to pollute proximately caused injury to Plaintiffs by polluting the Kowis Homestead property and water, resulting in damages and substantially interfering with Plaintiffs' private use and enjoyment of the property

155.     Defendants, individually and/or collectively in any combination, caused injury to Homestead Owning Plaintiff which resulted in the following damages:

a.     Market-value damages for permanent injury to land, which is the difference between the property's value immediately before or after the damage, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

b.     Actual or Intrinsic-value damages for permanent injury to land, because there is no market value for the land, as the injury (1) cannot be repaired, fixed, or restored, or (2) if the injury can be repaired, fixed or restored, an injury that is substantially certain to repeatedly, continually, and regularly reoccur.

c.     In the alternative or in addition to sections (a) and (b) of this paragraph, damages for cost-of-repairs and loss of use for temporary injury to the land, as the injuries to the land are temporary injuries that can be repaired, fixed, or restored and for which any recurrence would be only occasional, irregular, intermittent, and not reasonably predictable.

d.      Stigma damages, which compensate plaintiff for the permanent injury to the property's reputation even after it was physically restored.

e.      Physical pain in the past and future

f.      Mental anguish in the past and future.

g.      Medical expenses in the future.

156.    Defendants, individually and/or collectively in any combination, invaded and/or interfered with Homestead Owning Plaintiffs' interest and caused injury to members of Homestead Owning Plaintiff's household, namely Homestead Resident Plaintiffs, which resulted in the following damages to Homestead Resident Plaintiffs:

a.      Physical pain in the past and future

b.      Mental anguish in the past and future.

c.      Medical expenses in the future.

157.    Plaintiffs seek damages within the jurisdictional limits of this Court.

158.    Exemplary damages. Homestead Owning Plaintiff's and Homestead Resident Plaintiffs' injuries resulted from Defendants' gross negligence or malice, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## N. VICARIOUS LIABILITY – CORPORATE VEIL

159.    Plaintiffs reallege and incorporate by reference Paragraph Nos. 1 through 158 of this Complaint as if fully restated herein.

160.    Defendant corporations Tram Chemicals, Inc., Walden Environmental Chemistries, Inc. d/b/a Pro Stix Services and also d/b/a GWEB Trading Company, Walden Performance Products, Inc., Maxcong, LLC, Comagle Management, LLC, and  G&C

Management, LLC, were organized and operated as mere tools or business conduits of each other Defendant corporation.

161.     Each corporate Defendant has so intermingled their financial affairs that the corporate Defendants were and are the alter egos of each other.

162.     Such unity between the corporate Defendants exists that the separateness of the single corporations has ceased.

163.     Each Defendant corporation has a financial interest in the other corporate Defendants.

164.     Holding only one corporate Defendant liable would result in injustice for Plaintiffs.

165.     Defendant corporations used their unity to circumvent statutes; namely, RCRA and/or the Texas Water Code.

166.     Defendant corporations used their unity to protect against the discovery of a crime and/or to justify a wrong, namely, the violations and injuries alleged by Plaintiffs.

167.     Plaintiffs request that the Court pierce the corporate veil and hold each corporate Defendant vicariously liable for the actions of the other corporate Defendants.

## O. INDIVIDUALS AS ALTER EGOS OF CORPORATIONS

168.     Plaintiffs reallege and incorporate by reference Paragraph Nos. 1 through 169 of this Complaint as if fully restated herein.

169.     Each of the Defendant corporations were were organized and operated as mere tools or business conduits of individual Defendants, Enrique Bendesky and Glen E. Walden, for their personal benefit and advantage, in that the individual Defendants have exercised total dominion and control over the corporate Defendants.

170.     The individual Defendants were the first and only directors of the corporate Defendants.

171.     The individual Defendants and the corporate Defendants have so intermingled their personal financial affairs that the corporate Defendants were and are the alter egos of the individual Defendants.

172.     Holding only the corporate Defendants liable would result in injustice for Plaintiffs.

173.     Plaintiffs request that the Court pierce the corporate veil and hold the individual Defendants liable for the above stated causes of action, in addition to the corporate Defendants.

## P. DEFENDANTS IN JOINT VENTURE

174.     Plaintiffs reallege and incorporate by reference Paragraph Nos. 1 through 175 of this Complaint as if fully restated herein.

175.     At all relevant times, Defendants were members of and engaged in the operation of a joint venture for their mutual benefit and profit, for the purpose of running a chemical tank cleaning company. As part of their joint venture, Defendants owned and operated the chemical cleaning facility at 13939 Old Texaco Rd, Conroe, Texas 77302.

## Q. ATTORNEY'S FEES & COSTS

176.     Plaintiffs request that this Court award their costs of litigation, including all attorneys' fees, expert witnesses' fees, and all costs for preparation of this proceeding.

## R. JURY DEMAND

177.     Plaintiffs demand a jury trial and tender the appropriate fee with this complaint.

## S. PRAYER

WHEREFORE, the Plaintiff respectfully demands and prays that judgement be rendered as follows:

A. That the Court issue an order requiring all Defendants, jointly and severally, to do as follows:

   a. Formulate plans for the study, monitoring, removal and treatment of contaminated soils, surface water, and groundwater at the Kowis Homestead, which plan shall meet the requirements of and be subject to the approval of the Plaintiffs and the United States Environmental Protection Agency.

   b. Monitor, remove, treat and dispose of contaminated soils, surface water, and groundwater at the Kowis Homestead in accordance with the plan.

B. That the Court order all Defendants, jointly and severally, to reimburse the Plaintiffs for all past and future expenses for investigations, cleanup activities, and responsive actions relating to the hazardous waste on the Polluting Site and the Kowis Homestead, for investigations relating to the soil and groundwater at the site, and for other enforcement activities related to the site including, but not limited to, funds expended by the Plaintiffs for sampling and analysis.

C. That the Court retain jurisdiction over this matter until such time as all remedial measures have been effectuated.

D. That each Plaintiff be awarded actual and punitive damages, to the extent allowed by law, for Defendants' Negligent Trespass, Private Nuisance, Nuisance Per Se, Negligence Per Se, Trespass to Real Property, and Conspiracy.

E. That the Court award all consequential and special damages where applicable, including but not limited to:

a.  damages resulting from intentional and unintentional torts.

b.  damages to any future owners of the Plaintiffs' lands.

c.  punitive damages against all Defendants for their outrageous misconduct.

d.  any and such other legal and equitable relief as the Court deems just and proper.

e.  a deposit with the Court for payment to the Plaintiffs sufficient monies to establish a fund for the following types of damages:

(a) personal injuries, including, but not limited to: direct medical costs of treatment, medication, care, rehabilitation, and pain and suffering related to Plaintiff's' exposure to the release of hazardous waste.

(b) medical screening, including: costs of annual medical tests to detect cancer, birth defects, and other diseases related to Plaintiff's' exposure to release of hazardous waste, under, over, and upon the land of the Plaintiffs.

(c) property damage, including loss and value of the property related to the release and hazardous waste.

(d) emotional distress, including but not limited to: mental anguish, depression, anxiety, fear of cancer, and any other disease, loss of consortium, and disruption of normal family existence related to the released hazardous waste.

(e) out-of-pocket costs, including, but not limited to: cost of bottled water, loss or damage to personal property, loss of chattels, farm animals, homegrown produce, increased automobile use to obtain alternative water

supplies, water tests costs, and water bills if and when public water is supplied.

(f) lost time, including, but not limited to: economic consequences of Plaintiffs' response time to the contamination situation, water hauling time, and lost work and wages.

(g) all expert and consultant fees to remedy the damages caused by the contamination and pollution.

F.   That the Court award Plaintiffs the following specific relief:

(1) declare all Defendants in violation of RCRA for storing, transporting and/or disposing of hazardous waste on the Polluting Site in violation of the Federal Laws and Regulations.

(2) declare all Defendants jointly and severally liable to Plaintiffs in Negligent Trespass, Private Nuisance, Negligence Per Se, Nuisance Per Se, Trespass to Real Property, and Conspiracy, for injury and damages suffered by Plaintiffs.

(3) order Defendants to take whatever actions are necessary to immediately cease and desist any discharge of the pollutants.

(4) order Defendants to immediately cease and desist any storage and disposals of hazardous waste on the Pollution Site and the Kowis Homestead.

(6) order Defendants to fully and completely clean up the Pollution Site and Kowis Homestead, including all contaminated soils, surface water, groundwater and vegetation.

WHEREFORE, the Plaintiffs demand judgment, that the Court award Plaintiffs their damages, costs of suit herein and any other relief as the Court finds just, lawful and proper.

Respectfully submitted,

Reich & Binstock,

By: _/s/_ Dennis_C. Reich_____
Dennis C. Reich
Texas Bar No. 16739600
Email: DReich@reichandbinstock.com
4265 San Felipe, Suite 1000
HOUSTON, TX 77027
Tel. (713) 622-7271
Fax.(713) 623-8724
Benjamin H. Rose
Texas Bar No. 24079243
Harwood Rose PLLC
Email: Ben@Harwoodrose.com
4265 San Felipe, Suite 1000
HOUSTON, TX 77027
Tel. (713) 439-0727
Fax.(713) 623-8724

ATTORNEYS FOR PLAINTIFFS